IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOURKE,<br><br>      Plaintiff,<br><br>  v.<br><br>CITY & COUNTY OF SAN FRANCISCO, et al.,<br><br>      Defendants. | No. C 03-03105 CRB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT** |

    Following his arrest on a bench warrant for failure to appear in traffic court, Plaintiff Steven Yourke, Esq. was strip searched pursuant to San Francisco County Jail's Classification Search Policy ("Classification Search Policy" or "the Policy"). The Policy requires a visual strip search of all arrestees classified for custodial housing in the general jail population. Plaintiff challenges the legality of the strip search, asserting both a federal claim, pursuant to 42 U.S.C. section 1983, for violation of his Fourth Amendment rights, and state claims for violation of California Penal code section 4030 and Art. I, sections 1 and 13 of the California Constitution.

    The parties have each filed renewed cross-motions for summary judgment. Plaintiff seeks partial summary judgment as to his state claim under California Penal Code section 4030 only. Defendants City and County of San Francisco, Sheriff Michael Hennessey, Deputy Sheriff Robert Gallot, and Police Officer Richard Jones (collectively, "Defendants")

seek summary judgment as to all claims. After carefully reviewing the parties' memoranda and the evidentiary record, and after hearing oral argument, the Court hereby DENIES Plaintiff's motion for partial summary judgment and GRANTS Defendants' motion for summary judgment as to all claims.

**BACKGROUND**

**I.  Factual History**

On September 18, 2002, at approximately 2:00 a.m., Plaintiff was driving home from downtown San Francisco when he pulled over to the side of the road in San Francisco's Tenderloin neighborhood to speak to an acquaintance who was walking her bicycle on the sidewalk. When his acquaintance approached the vehicle, an undercover police officer emerged and detained her on suspicion of a drug transaction. At the same time, Officer Richard Jones drove up behind Plaintiff in an unmarked car, instructed Plaintiff to turn off his ignition, and asked for Plaintiff's driver's license. When Plaintiff asked Officer Jones why he was being stopped, Officer Jones indicated that Plaintiff was blocking traffic. Officer Jones proceeded to run a warrant check on Plaintiff's driver's license and found an outstanding misdemeanor warrant for Plaintiff's arrest for failure to appear in traffic court. At that time, Plaintiff was placed under arrest. This Court has previously determined that the initial traffic stop and subsequent arrest of Plaintiff were lawful. See 9/3/04 Order [Dkt 67].

Upon his arrest, Plaintiff was first taken to Tenderloin police station, where he remained for approximately one hour. Plaintiff was then transported to San Francisco County Jail No. 9, where he was booked and placed in a holding cell. The holding cell contained a phone and the phone numbers of bail bondsmen. Plaintiff began calling bail bondsmen at this time but was unable to secure bail. Plaintiff continued to attempt to bail out over the course of the next six (6) hours but was unsuccessful. At approximately 10:00 a.m., Plaintiff was classified for custodial housing in the general jail population. Pursuant to the jail's Classification Search Policy, Plaintiff was then strip searched and dressed in an orange jump suit in preparation for his removal to the general jail population.

Approximately an hour after he was strip searched, but before he was physically transferred to the general jail population, Plaintiff was finally able to obtain a bail bond. Plaintiff was released on bail shortly thereafter.

## II.     Procedural History

On July 2, 2003, Plaintiff filed a Complaint pursuant to section 1983 alleging that he had been unlawfully arrested and unlawfully strip searched. On June 9, 2004, Plaintiff was permitted to file an amended complaint adding state law claims for violation of California Penal Code section 4030 and Art. I, sections 1 and 13 of the California Constitution.

By Order dated September 3, 2004, this Court granted Defendants' motion for summary judgment on Plaintiff's false arrest claim.

On May 19, 2006, the parties filed cross-motions for summary judgment on Plaintiff's federal and state strip search claims. By Order dated June 27, 2006, this Court denied the cross-motions for summary judgment without prejudice and stayed the matter pending instruction from the Ninth Circuit in the related case of Bull v. City & County of San Francisco, No. C-03-1840.

On February 10, 2010, the Ninth Circuit issued its opinion in Bull v. City & County of San Francisco, 595 F.3d 964, 982 (9th Cir. Cal. 2010) (hereinafter "Bull").

On August 6, 2010, the parties filed renewed cross-motions for summary judgment. Plaintiff seeks partial summary judgment as to his state claim under California Penal Code section 4030 only. Defendants seek summary judgment as to all claims.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the moving party to demonstrate that there is no genuine dispute with respect to any material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v Catrett, 477 U.S. 317, 323 (1986). Only if the moving party is successful in showing no genuine issue of material fact, or a complete lack of

3

evidence supporting the non-moving party's case, does the burden shift to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" Id. at 324-25 (quoting Fed. R. Civ. P. 56(c). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. See Celotex, 477 U.S. at 323. Moreover, in deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**DISCUSSION**

## I.   Plaintiff's Federal Claim

The Ninth Circuit has now unequivocally determined that the Classification Search Policy at issue in this case does not violate the Fourth Amendment. See Bull v. City & County of San Francisco, 595 F.3d 964, 982 (9th Cir. Cal. 2010) ("[W]e conclude that San Francisco's policy requiring strip searches of all arrestees classified for custodial housing in the general population was facially reasonable under the Fourth Amendment, notwithstanding the lack of individualized reasonable suspicion as to the individuals searched."). In reaching this conclusion, the Ninth Circuit largely applied standards set forth by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979) and Turner v. Safley, 482 U.S. 78 (1987). The Court explained:

> [T]he balance between the need for the San Francisco strip search policy and "the invasion of personal rights that the search entails" must be resolved in favor of the jail system's institutional concerns. [Bell, 441 U.S. at 559]. While strip searches are invasive and embarrassing, and while this type of security measure "instinctively gives us the most pause," id. at 558, we must conclude that under Bell, San Francisco's strip search policy was reasonable and therefore did not violate the class members' Fourth Amendment rights.

Bull, 595 F.3d at 975. Thus, while Bull, following Bell, recognizes that a strip search pursuant to the Policy may, at least in some circumstances, constitute an "invasion of personal rights" of the arrestee, the court concluded that this invasion does not make the searches performed pursuant to the Classification Search Policy unreasonable under the Fourth Amendment given legitimate penological interests in "maintaining security for

4

inmates and employees by preventing contraband smuggling." Id. See also Turner v. Safley, 482 U.S. 78, 89 (1987).

Plaintiff does not dispute that he was strip searched pursuant to the Policy when, due to the fact that he was unable to secure a bail bond during the six (6) hours in which he was confined in a holding cell, he was classified for custodial housing in the general jail population. See Yourke Decls., Exhs. B, C, and D to the Decl. of Joanne Hoeper in Support of Defs.' Renewed Mot. for SJ (Dkt. 125). Because Plaintiff admits that he was strip searched in accordance with the Policy and does not allege that the strip search was administered in a manner inconsistent the Policy, the Ninth Circuit's decision upholding the Policy in Bull is dispositive as to his Fourth Amendment claim. There is no genuine issue of material fact with respect to Plaintiff's federal claim in light of Bull, and summary judgment for Defendants is now appropriate on the federal claim.

## II. Plaintiff's State Claims

### A. California Penal Code section 4030

With respect to Plaintiff's state claim that the strip search violated California Penal Code section 4030, the related case of Bull v. City and County of San Francisco, No. C-03-1840, is again instructive. In that case, Plaintiff Bull argued, as here, that a strip search of an arrestee pursuant to the Classification Search Policy violates section 4030 when the search is conducted absent individualized suspicion for any arrestee held in custody on a misdemeanor or infraction offense not involving weapons, a controlled substance, or violence.[1] See Bull v. City & County of San Francisco, 2006 U.S. Dist. LEXIS 9120, at *61-62 (N.D. Cal. Feb. 23, 2006).

---

[1]Subdivision (f) of section 4030 provides in pertinent part:

> No person arrested and held in custody on a misdemeanor or infraction offense, except those involving weapons, controlled substances or violence . . . shall be subjected to a strip search or visual body cavity search *prior to placement in the general jail population*, unless a peace officer has determined there is reasonable suspicion based on specific and articulable facts to believe such person is concealing a weapon or contraband, and a strip search will result in the discovery of the weapon or contraband.

Cal Pen Code § 4030(f) (emphasis added).

5

In rejecting this claim and denying Plaintiff Bull's motion for summary judgment, this Court determined that "a search without reasonable suspicion may take place consistent with section 4030 after: (1) the three subdivision (g) conditions [of Penal Code section 4030] are met; and (2) the circumstances demonstrate that the individual detainee is actually destined for the general jail population absent some unexpected reason for release."[2] Bull, 2006 U.S. Dist. LEXIS 9120, at *66. Here, there is no genuine dispute that the three subdivision (g) conditions of Penal Code 4030 were met. At the time of the search, Plaintiff (i) was not cited and released, (ii) was not released on his own recognizance, and (iii) was not able to post bail after a reasonable time of at least three hours. See Yourke Decls., Exhs. B, C, and D to the Decl. of Joanne Hoeper in Support of Defs.' Renewed Mot. for SJ (Dkt. 125). As such, the parties' cross-motions for summary judgment on the section 4030 claim turn on whether there is a genuine factual dispute as to whether the circumstances at the time of the strip search demonstrated that Plaintiff was <u>actually destined</u> for the general jail population absent some unexpected reason for release. See Bull, 2006 U.S. Dist. LEXIS 9120, at *61-62.

In an attempt to raise a genuine factual question as to whether he was actually destined for the general jail population, Plaintiff argues that he "told [the] Sheriff's deputies several times prior to the strip search that he was definitely going to bail out shortly" and that "[t]here was nothing 'unexpected' about Plaintiff's bailing out of Jail." See Pl.'s Resp. to Defs.' Renewal of Mot. for SJ [Dkt 128], incorporating by reference Pl.'s Am. Opp. to Defs.' Mot. for SJ at 15 [Dkt 89]. However, Plaintiff's own declarations clearly indicate that, notwithstanding his continuing attempts to bail out, Plaintiff was actually destined for the general jail population when, approximately eight (8) hours after his arrest and six (6) hours after being placed in a holding cell, he was classified for custodial housing, strip searched,

---

[2] Subdivision (g) of section 4030 provides that no arrestee held in custody on a misdemeanor or infraction offense not involving weapons, controlled substances or violence may be confined in the general jail population "unless all of the following are true: (i) The person is not cited and released[;] (ii) The person is not released on his or her own recognizance pursuant to Article 9 (commencing with Section 1318) of Chapter 1 of Title 10 of Part 2[;] (iii) The person is not able to post bail within a reasonable time not less than three hours." Cal. Pen Code § 4030(g).

6

1 and dressed in an orange jump suit in preparation for transfer into the general jail population.
2 See Yourke Decls., Exhs. B, C, and D to the Decl. of Joanne Hoeper in Support of Defs.'
3 Renewed Mot. for SJ (Dkt. 125).  The fact that Plaintiff was finally able to post a bail bond
4 approximately an hour after his classification and strip search, but prior to his physical
5 transfer to the general jail population, does not raise a genuine issue of material fact as to
6 whether he was actually destined for the general jail population at the time the search
7 occurred.  As this Court has previously determined, searches under these circumstances do
8 not run afoul of section 4030.  See Bull, 2006 U.S. Dist. LEXIS 9120, at *68.  Thus, there is
9 no genuine issue of material fact with respect to Plaintiff's section 4030 claim, and summary
10 judgment for Defendants on the claim is appropriate.

**B.     California Constitution, Art. I, sections 1 and 13**

Finally, Plaintiff claims that the strip search violated his inalienable right to privacy under Art. I, section 1 of the California Constitution and was unreasonable under Art. I, section 13.  Although the rights defined in the California Constitution have independent force and "are not mirror images of their federal counterparts," American Academy of Pediatrics v. Van de Kamp, 214 Cal. App. 3d 831, 839 (1989) (citing Committee to Defend Reproductive Rights v. Myers, 29 Cal. 3d 252, 261 (1981); People v. Brisendine, 13 Cal. 3d 528, 551 (1975)), within the context of search and seizure, the "'article I, section 1 'privacy' clause [of the California Constitution] has never been held to establish a broader protection than that provided by the Fourth Amendment of the United States Constitution or article I, section 13 of the California Constitution.'"  In re York, 9 Cal. 4th 1133, 1149 (1995) (quoting People v. Crowson, 33 Cal. 3d 623, 629 (1983)).  As such, Plaintiff's California Constitution claims can overcome the Ninth Circuit's upholding of the Classification Search Policy in Bull only to the extent that Art. I, section 13 of the California Constitution is read to provide broader protection than the Fourth Amendment in the context of jailhouse strip searches of arrestees.

The Fourth Amendment defines the minimum protection provided under Art. 1, section 13.  Craft v. County of San Bernardino, 468 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) (citing In re Lance W., 37 Cal. 3d 873, 875 (1985)).  At least since Wolf v. Colorado, 338

7

U.S. 25 (1949), California courts have treated Art. I, section 13 [formerly § 19] as "substantially equivalent" to the Supreme Court's construction of the Fourth Amendment. People v. Triggs, 8 Cal. 3d 884, 892, n.5 (1973) (citing Blair v. Pitchess, 5 Cal. 3d 258, 270-271, n. 6 (1971)). Although California courts have found that section 13 provides greater protection than the Fourth Amendment in at least some contexts (see California v. Martin, 45 Cal.2d 755, 759-761 (1955) (vicarious exclusionary rule); California v. Brisendine, 13 Cal. 3d 528, 548-52 (1975) (search incident to arrest)), these cases did not involve searches in the custodial detention setting, where expectations of privacy are substantially diminished and the security concerns of the correctional facility are paramount. See People v. Owens, 112 Cal. App. 3d 441, 448 (1980).

Moreover, the "touchstone for all issues under the Fourth Amendment and article I, section 13 of the California Constitution is reasonableness." Ingersoll v. Palmer, 43 Cal. 3d 1321, 1329 (1987). The Ninth Circuit has interpreted this language to mean that "the right to be free from unreasonable searches under Art. I § 13 of the California Constitution parallels the Fourth Amendment inquiry into the reasonableness of a search." Sanchez v. County of San Diego, 464 F.3d 916, 928-29 (2006). Just as under federal law, the reasonableness of a search under California law turns on the balance between the government interest served and the intrusion of the search. See Ingersoll, 43 Cal. 3d at 1329.

Here, the record reflects a problem with contraband smuggling at the jail where Plaintiff was searched.[3] There was thus a substantial government interest in conducting strip searches of arrestees classified for housing in the general population–both to detect contraband and to deter arrestees from attempting to smuggle contraband into the general jail population. Moreover, San Francisco's Classification Search Policy limited strip searches to those arrestees who were classified for housing in the general population. The Policy also

---

[3] "Strip searches at County Jail No. 9 have led to the discovery of weapons and other contraband on the persons of arrestees. Defendant produced evidence that from April 2000 through April 2005 strip searches at County Jail No. 9 resulted in the discovery of 73 cases of illegal drugs or drug paraphernalia hidden in body cavities. In that same time period, six weapons were also discovered as a result of strip searches." Bull, 2006 U.S. Dist. LEXIS 9120, at *6.

mandated that the searches be carried out "in a professional manner in an area of privacy" and specifically excluded physical body cavity searches. San Francisco Sheriff's Dep't Proc. No. E-03, E-03(III). Given the diminished expectations of privacy in the custodial detention setting, and given that this Court could find no California authority either holding or implying that Art. I, section 13 of the California Constitution provides greater protections than the Fourth Amendment within the context of jailhouse strip searches of arrestees, a strip search conducted pursuant to, and within the confines of, the Classification Search Policy does not violate section 13. Because Plaintiff does not dispute that he was strip searched pursuant to the Policy, nor that the search was administered in a manner consistent with the Policy, there is no genuine issue of material fact with respect to his California Constitution claims, and summary judgment in Defendants' favor is appropriate.

## **Conclusion**

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Partial Summary Judgment (Dkt. 126) and GRANTS Defendants' Motion for Summary Judgment (Dtk. 124).[4]

**IT IS SO ORDERED.**

Dated: September 16, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[4] On September 7, 2010, Plaintiff filed a Motion to Dismiss Federal Claims & to Remand Case to California Superior Court. Dkt. 130. In light of this Order, there are no claims to remand, and Plaintiff's Motion to Dismiss & Remand (Dkt. 130) is DENIED as moot. In any case, this Court has no authority to "remand" an action to state court that was not originally filed there.